**AUDIO DEVICES, INC., Plaintiff**

v.

**MINNESOTA MINING & MANUFAC-TURING COMPANY and Armour Research Foundation of Illinois Institute of Technology, Defendants.**

United States District Court
S. D. New York.
Dec. 19, 1960.

Pennie, Edmonds, Morton, Barrows & Taylor, New York City, Merton S. Neill, Thomas F. Reddy, Jr., Ambrose A. Arnold, New York City, of counsel, for plaintiff.

Burgess, Ryan & Hicks, New York City, Carpenter, Abbott, Coulter & Kinney, St. Paul, Minn., William N. Abbott, St. Paul, Minn., of counsel, H. H. Hamilton, New York City, of counsel, for defendant Minnesota Mining & Manufacturing Co.

Kane, Dalsimer & Kane, New York City, Hill, Sherman, Meroni, Gross & Simpson, Chicago, Ill., Joseph C. Sullivan, New York City, Carlton Hill, Benjamin H. Sherman, Chicago, Ill., of counsel, for defendant Armour Research Foundation of Illinois Institute of Technology.

CASHIN, District Judge.

This action, commenced on June 8, 1955, seeks a declaratory judgment of

noninfringement and invalidity with respect to United States Letters Patent No. 2,694,656. This patent entitled "Magnetic Impulse Record Member, Magnetic Material And Method Of Making Magnetic Material" was granted on November 16, 1954. Plaintiff's second amended complaint, in addition to seeking a declaratory judgment of noninfringement and invalidity, also alleged the nonenforceability of said patent and a violation of the anti-trust laws. Defendants' answers denied the existence of a controversy; denied they violated the anti-trust law; denied the jurisdiction of the court and asked that plaintiff's action be dismissed. Defendant, Armour Research Foundation of Illinois Institute of Technology, also filed a compulsory counterclaim charging plaintiff with infringement of United States Letters Patent No. 2,694,656.

The triable issues in this action were outlined in the Pre-Trial Stipulation and Pre-Trial Order No. 1 and included:

"(a) The alleged validity of United States Patent No. 2,694,656.

"(b) The alleged non-enforceability of United States Patent No. 2,694,656 by reason of the alleged misuse thereof.

"(c) The alleged infringement of United States Patent No. 2,694,656 by Audio Devices, Inc.'s manufacture, use or sale of a black magnetic ferrosoferric oxide, $Fe_3O_4$, obtained by reduction of a non-magnetic iron oxide; of a red gamma ferric oxide, $Fe_2O_3$, obtained by reduction of a non-magnetic iron oxide and oxidation of the iron oxide product of the reduction and the manufacture, use or sale of magnetic recording media coated with such gamma or ferrosoferric oxide.

"(d) The alleged violation of the antitrust laws by Armour Research Foundation and Minnesota Mining & Manufacturing Company by reason of an alleged combination and conspiracy to restrain unreasonably interstate trade and commerce in magnetic recording tape and in magnetic iron oxides suitable for use as magnetic recording material with which such tape is coated and to monopolize the trade and commerce in magnetic recording tape and magnetic recording material among the several states and to restrain and suppress competition therein.

"(e) The alleged lack of jurisdiction of the Court over the defendant Armour Research Foundation in the claim for relief with respect to the invalidity, noninfringement and unenforceability of U.S. Patent No. 2,694,656.

"(f) The alleged non-existence of a controversy between the parties with respect to the subject matter of U.S. Patent No. 2,694,656."

Under Pre-Trial Stipulation and Pre-Trial Order No. 2 the issues set forth in paragraphs (b), (d) and (e) above were withdrawn.

The trial lasted 15 court days and, in accordance with the Pre-Trial Stipulation and Pre-Trial Order entered into on February 4, 1960, the defendants put in their prima facie case as to the patent in suit first, followed by plaintiff's defense as to patent infringement including defenses in support of plaintiff's assertion of invalidity of the patent in suit. The trial record contains 2,722 pages of testimony and plaintiff introduced into evidence 182 exhibits and defendants introduced 144.

During the trial plaintiff contended that the patent in suit was invalid because—

(1) The patent specification and claims are indefinite and lack criticality within the requirements of the patent statutes;

(2) The patent lacks invention;

(3) The products of the patent were in prior use in this country more than one year before the filing of the application for the patent in suit;

(4) The claimed inventions were patented or described in printed publica-

tions more than one year prior to the filing of the application for the patent in suit;

(5) The claim of improvement contended for the invention by defendants does not in fact exist as a factor attributable to the patent; and

(6) The criteria of the patent in suit are in fact meaningless and lack utility within the requirements of the patent law since they do not teach the result claimed.

In light of my findings of fact recited below as to anticipation by the prior art and lack of invention, it is unnecessary to consider the other grounds alleged as a basis of invalidity.

### Findings of Fact

1. Plaintiff, Audio Devices, Inc. (hereinafter referred to as "Audio"), is a New York corporation having its principal offices in New York City and several manufacturing plants in Connecticut, where it has been manufacturing magnetic recording tape since 1948.

2. Defendant, Armour Research Foundation of Illinois Institute of Technology (hereinafter referred to as "Armour"), a non-profit Illinois corporation located in Chicago, is largely devoted to research and consulting work for industry and is the owner of United States Letters Patent No. 2,694,656.

3. Defendant, Minnesota Mining and Manufacturing Company (hereinafter referred to as "Minnesota"), is a Delaware corporation having its principal office in St. Paul, Minnesota. Among other things, it manufactures magnetic recording tape in competition with plaintiff under an exclusive license from Armour.

4. United States Letters Patent No. 2,694,656 was issued November 16, 1954 upon an application filed June 25, 1947 by Marvin Camras. The patent relates to a method of making magnetic iron oxides, the oxides themselves, and the use of those oxides on recording tape.

5. This patent was held invalid by Judge Juergens of the United States District Court for the Eastern District of Illinois in Armour Research Foundation of Illinois Institute of Technology v. C. K. Williams & Co., 1959, 170 F. Supp. 871. This was affirmed by the Court of Appeals for the Seventh Circuit on July 12, 1960 (280 F.2d 499).

6. Pursuant to Pre-Trial Order No. 1, dated February 4, 1960, the parties agreed that testimony in the Armour Illinois action could be introduced into the record in this case and during the course of the trial a substantial portion of that record was made a part of the record in the instant case. Also, in the Illinois action certain inter-partes tests and demonstrations were made wherein prior art methods for producing magnetic iron oxides were followed and prior art oxides were produced. These tests were incorporated in the record herein by Pre-Trial Order No. 1 in order to avoid an unnecessary repetition of proceedings, to which Armour and Minnesota were parties.

7. I find that an actual controversy exists between the parties since Armour's charge of infringement in the Illinois action was made against oxides which were used by Audio interchangeably with its own oxides in the manufacture of tape and against recording tape substantially identical with Audio's tape. Customers of Audio have requested and obtained indemnity agreements both before and after the filing of the complaint and amended complaints herein, specifically with respect to any claims that might be made under the patent in suit, as a condition for their purchase of magnetic recording tape from Audio.

8. The patent in suit covers a permanent magnetic material and a method of making the material. This material may then be impregnated or coated on a non-magnetic carrier, such as a plastic or paper film or tape, to form a magnetic record or tape member. The claims of the patent relating to the method are 8, 10 and 14, and read as follows:

"8. The method of making permanent magnet material, which comprises precipitating a non-magnetic ferric oxide from solution in

acicular crystalline form, heating said non-magnetic ferric oxide in a reducing hydrogen atmosphere to a temperature of about 750° F. for a sufficient length of time to reduce said ferric oxide to a magnetic ferrosoferric oxide, cooling the ferrosoferric oxide in the presence of a reducing atmosphere to room temperature and then exposing said ferrosoferric oxide to the air to recover a ferrosoferric oxide having a coercive force value between 200 and 550.

"10. The method of making magnetic material, which comprises precipitating a non-magnetic ferric oxide from solution in acicular crystalline form and of a particle size less than 6 microns in greatest dimension, heating said non-magnetic ferric oxide to a temperature between 500 and 1000° F. in a reducing atmosphere until the reduced oxide turns almost black, stopping the reaction at that point by cooling said reduced oxide in a reducing atmosphere to around room temperature and recovering ferrosoferric oxide of the same crystalline form and same order of particle size but having permanent magnet properties including a coercive force of over 200 oersteds and a $B_{fm}/B_r$ (H—1000) of not over 3 to 1 and reoxidizing said ferrosoferric oxide in the presence of oxygen at a temperature between 300° F. and 900° F. to produce a magnetic iron oxide consisting essentially of gamma $Fe_2O_3$.

"14. The method of making magnetic iron oxide which comprises providing a synthetic non-magnetic ferric oxide in acicular crystalline form and of particle size not over 6 microns in its greatest dimension, reducing said non-magnetic oxide at elevated temperatures to produce a ferrosoferric oxide and oxidizing said ferrosoferric oxide to gamma ferric oxide having permanent magnet properties including a coercive force of at least 200 oersteds."

9. The claims of a patent relating to the magnetic iron oxides *per se* are 3 and 25, and read as follows:

"3. A ferromagnetic iron oxide material adapted to form an element of a magnetic impulse record member, said material consisting essentially of acicular crystalline particles uniformly small in size and not over 6 microns in their greatest dimension of a synthetic magnetic oxide of iron selected from the group consisting of magnetic ferrosoferric oxide, $Fe_3O_4$, and magnetic gamma ferric oxide, $Fe_2O_3$, the selected synthetic magnetic oxide of iron having a cubic lattice structure, and said material having a coercive force value of between 200 and 550 oersteds and a ratio of $B_{fm}/B_r$ at H—1000 of not over 3 to 1.

"25. Ferromagnetic iron oxide selected from the group consisting of a synthetic ferrosoferric oxide, $Fe_3O_4$, and of a synthetic gamma ferric oxide, $Fe_2O_3$, adapted to form an element of a magnetic impulse record member, said iron oxide consisting essentially of uniformly small elongated crystals of less than about 1.5 microns maximum dimension having a length-to-width ratio of about 2.5 to 1 and higher, and having a cubic crystal lattice structure and a coercive force, $H_c$, within the range of 245 to 330 and remanence, $B_r$, of above about 500 gauss.

10. Claims 5, 6 and 26 relate to the use of the oxides on recording tape, and read as follows:

"5. A magnetic impulse record member having a non-magnetic carrier and a coating adherently bonded thereto of magnetic material and a binder therefor, said magnetic material consisting essentially of a magnetic synthetic iron oxide selected from the group consisting of ferrosoferric oxide, $Fe_3O_4$, and gamma ferric oxide, $Fe_2O_3$, formed from a

non-magnetic iron oxide of the group consisting of alpha ferric oxide monohydrate and anhydride thereof, said selected iron oxide being in crystalline form of a uniformly small size less than 6 microns in greatest dimension and having a coercive force of between 200 and 550 oersteds, said magnetic material having a $B_r$ versus H characteristic that rises most rapidly at fields between 200 and 600 oersteds and relatively slowly at fields between 0 and 200 oersteds and at fields above 600 oersteds.

"6. As a new article of manufacture, a magnetic impulse record member comprising a thin, flexible, non-magnetic support, and adhered thereon, a layer of a magnetic synthetic iron oxide selected from the group consisting of ferrosoferric oxide, $Fe_3O_4$, and gamma ferric oxide, $Fe_2O_3$, formed from a non-magnetic iron oxide of the group consisting of alpha ferric oxide monohydrate and the anhydride thereof, said selected iron oxide in its as-produced condition being in the form of elongated particles having characteristically a length-to-width ratio of about 2.5 to 1 and higher and being of acicular crystalline form and of a uniformly small particle size less than six microns in greatest dimension and having a coercive force of between 200 and 550 oersteds.

"26. A magnetic impulse record member having a non-magnetic carrier and a coating adherently bonded thereto of a binder and magnetic material, said magnetic material being the ferromagnetic iron oxide defined in claim 25 and having a $B_r$ versus H characteristic that rises most rapidly at fields between 200 and 600 oersteds and relatively slowly at fields between 0 and 200 oersteds and at fields above 600 oersteds."

11. The important characteristics or criteria of the patent are—

(a) The recording tape and the oxide used in it should have a relatively high coercive force generally between 200 and 550 oersteds;

(b) The $B_r$ versus H curve (Figure 1 of the Camras patent) should present a lower bend with a relatively gentle slope to an $H_o$ point of about 250 gauss;

(c) The $B_r$ versus H curve of the tape should have a rapid rate of rise after the lower bend of the curve or at fields of between 200 and 600 oersteds;

(d) A high remanence ($B_r$) of above 500 gauss and a $B_{tm}/B_r$ ratio of less than 3 to 1;

(e) The magnetic material of the tape should be a synthetic material and the patent specifies that the particles preferably are less than 1.5 microns and certainly less than 6 microns in maximum dimensions; and

(f) The particles of magnetic oxide should have an acicular or elongated shape.

12. Plaintiff claims that the oxides claimed as an invention by Camras were anticipated by the prior art and that the use of magnetic iron oxides for magnetic impulse recording was also anticipated by the prior art.

13. The Johnson patent (British Patent No. 466,023) dated November 18, 1936, entitled "Improvements in the Manufacture and Production of Sound Record Carriers", discloses the use of magnetite or black ferrosoferirc iron oxide ($Fe_3O_4$) and the red gamma ferric oxide ($Fe_2O_3$) as "especially suitable" for the "reproduction of sound by means of sound carriers which consist of magnetic materials on or in a non-magnetic carrier material." Johnson further discloses that the advantages of using such oxides resided in "the extreme fineness and the very great uniformity in the size of the particles" which are "1/1000 millimetre or less" (1 micron or less). Johnson goes on to state that "The magnetic properties of the oxides, in particularly their induction and remanence with low field strengths, are favourable for their use as sound record carriers. The high

coercive force ensures a good stability of the sound recording."

14. In 1941 Japanese Patent No. 148,-643 disclosed a method for the manufacture of magnetic black ferrosoferric ($Fe_3O_4$) oxide by blowing air into a water solution of $FeSO_4$ in order to form a finely divided yellow alpha ferric oxide monohydrate and reducing this by heating in a carbon monoxide atmosphere to convert it to black ferrosoferric oxide. It also explains that the black pigment can be similarly produced starting with the anhydride of the hydrated ferric oxide. The patent teaches the production of the yellow oxide starting material and the reduction of the yellow alpha ferric oxide monohydrate at a temperature "below sintering temperature" to form black $Fe_3O_4$.

15. The yellow oxide ($Fe_2O_3 . H_2O$), produced by following Japanese patent No. 148,643, was acicular in shape and less than 1 micron in size, and the black magnetic oxide ($Fe_3O_4$), produced by reduction "below sintering temperature", was likewise acicular in shape and less than 1 micron in size. The evidence established that magnetic iron oxides produced by following the Japanese patent and coated on tape had a coercive force of 262 oersteds, a remanence of 580 gauss, a $B_{fm}/B_r$ ratio of less than 3 to 1 and a $B_r$ versus H curve having a rapid rise between 250 to 600 oersteds.

16. The "sintering temperature" referred to above is shown to be about 600 degrees Centigrade in the United States Bureau of Mines Bulletin 425, entitled "Magnetic Separation of Ores". The publication refers to a natural non-magnetic material (Goethite, $Fe_2O_3 . H_2O$) and discloses that better magnetics may be obtained from artificial or synthetic starting materials which are purer. Goethite is acicular and the advantage of the orientation of these elongated particles is disclosed. The method disclosed in this publication includes the reduction of non-magnetic starting material by treatment with hydrogen or other reducing gas under the same reducing conditions as Camras and the resulting product is a black magnetic iron oxide, $Fe_3O_4$. The Bulletin further discloses a method for producing $Fe_2O_3$ by oxidation of magnetic $Fe_3O_4$ to magnetic gamma $Fe_2O_3$ under the same reaction conditions as disclosed in the Camras patent.

17. Magnetic iron oxides are disclosed in the Bulletin having coercive forces of 220, 245 and 271 and reflecting a flat toe of the $B_r$ versus H curve which then rises rapidly and flattens as saturation is approached. The magnetic iron oxide also is shown to have a remanence of above about 500 gauss, i. e., a $B_r$ of 522, 573 and 577.

18. In 1931 an article by Williams and Thewlis, entitled "The Heat Treatment Of The Monohydrate Of Ferric Oxide", disclosed a method of making a magnetic iron oxide. By following the method of Williams and Thewlis in the inter-partes tests and demonstrations an oxide having a coercive force of over 200 oersteds and $B_{fm}/B_r$ ratio of less than 3 to 1 was produced which was acicular in form and less than 1 micron in size, and which substantially met all of the criteria asserted for the patent in suit.

19. In 1934 an article by Welo and Baudisch, which appeared in Chemical Reviews, disclosed oxidation, effected by free oxygen, of a ferrous iron salt ($FeCO_3$) in the presence of water to form "yellow ferric oxide hydrate", reduction of ferric oxide to $Fe_3O_4$ by heating it in an atmosphere of hydrogen and conversion of ferrosoferric oxide to gamma ferric oxide by heating it in air. Another method of producing magnetic iron oxide disclosed in this article was followed at the inter-partes tests in the Illinois action and a magnetic oxide having a coercive force of over 200 oersteds, a $B_{fm}/B_r$ ratio of 3 to 1 and a rapid rise in the $B_r$ versus H curve between 200 and 600 oersteds was produced. The particles were less than 6 microns in size and varied in shape, with some being acicular.

20. In 1936 the German Kaiser-Wilhelm Institut published an article by Kraeber and Luyken, entitled "The Magnetic Properties Of Natural And Syn-

thetic Iron-Oxygen Compounds". This article discloses methods by which iron oxides may be reduced and oxidized in order to provide certain magnetic properties. By following the method disclosed in this article in the inter-partes tests, an oxide was produced which corresponded in all respects to the criteria asserted in the Camras patent.

21. The patents and publications set forth in Findings of Fact numbered 13 to 20 disclose methods and processes for making magnetic iron oxides $Fe_3O_4$ and $Fe_2O_3$ substantially identical with the methods and processes set forth in the claims in issue in the Camras patent and in various examples described in that patent. Oxides produced by following the methods of these prior patents and publications, when coated on tape, had magnetic and physical characteristics of the oxides and oxide coated tape set forth in the claims of United States Letters Patent No. 2,694,656 and of the criteria asserted in this case in support of invention in said patent.

22. When a patent is granted a presumption of validity attaches to it. 35 U.S.C. § 282. However, this presumption can be overcome by sufficient evidence. I find that plaintiff has overcome this presumption by a clear showing of anticipation by the prior art. It should be noted that at the time the Patent Office passed on the patent in issue a great deal of the prior art relied on in this action was not before the Patent Office.

23. During the course of the trial various magnetic recording tapes made from oxides produced by prior art methods, alleged infringing oxides and Camras oxides, were recorded and played under standard and identical conditions. These tapes were the Camras 3M–100 tape made in 1947; German tape introduced in the United States by Herbert Orr in 1946; 3M–111 modern tape made in 1955 and employing the Camras invention; C. K. Williams IRN 110 whereon the dispersion was made by a ball milling; C. K. Williams LRN 110 whereon the dispersion was made by a roller mill; tape made from the prior art Welo

& Baudisch oxide made at the inter-partes demonstrations; tape made from the prior art Kraeber and Luyken oxide; tape made from the natural iron oxide, Goethite, by Audio; tape made from the prior art Japanese oxide made by Dr. Murray; and tape made from R & C oxide, commercially purchased by Audio in 1948 and coated on tape.

24. I find that there was no significant degree of difference in the performance of these various tapes which were tested under actual recording and playback conditions and that any variation in the tapes appeared to be minor.

25. I find that the Camras patent is nothing more than a combination of features from prior patents. The patentee's act of selecting a certain oxide and adopting it to use as a magnetic recording medium was merely a step in the natural progression of the art which was not beyond the standard of ordinary skill of workers in the recording field.

26. Defendants also rely on a very substantial commercial success to sustain the validity of the patent. However, commercial success without invention will not sustain a patent, and in this case lack of invention and anticipation by the prior art is clear. Great Atlantic & P. Tea Co. v. Supermarket Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162.

### Conclusions of Law

I. The court has jurisdiction of the action under the Patent Act of 1952, Title 35 U.S.C., and the Declaratory Judgment Act, Title 28 U.S.C. § 2201.

II. The presumption of validity which attaches upon the granting of the patent was overcome by plaintiff's evidence.

III. United States Letters Patent No. 2,694,656 is clearly anticipated by the prior art and a person with the exercise of ordinary skill of the calling could produce the subject matter of the patent.

IV. United States Letters Patent No. 2,694,656 is invalid.

V. Defendants' counterclaim alleging infringement of United States Letters Patent No. 2,694,656 is dismissed.

VI. Plaintiff is entitled to recover its costs in accordance with the applicable statutes.

Parties to settle the order.